# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

### Case No. 12-20031-CR-SCOLA

UNITED STATES OF AMERICA

vs.

JOAO LUIZ MALAGO,

    Defendant.
_____/

## ORDER DENYING DEFENDANT'S MOTION TO DISMISS COUNT 1

THIS MATTER is before the Court on the Defendant's Motion to Dismiss Based Upon Absence of Subject Matter Jurisdiction and Violation of the Due Process Clause (ECF No. 52). The Defendant seeks to dismiss Count 1 for violation of 21 USC. § 959(b) alleging a conspiracy to possess with intent to distribute narcotics while on board a United States registered aircraft. The Government has filed a Response to Defendant's Motion. Having reviewed the Motion, the Government's Response, the record, and the relevant legal authorities, it is **ORDERED AND ADJUDGED** that the Motion to Dismiss Count 1 is **DENIED**.

In count 1 of the Superseding Indictment, the Defendant was charged with: "knowingly and intentionally combin[ing], conspir[ing], confederat[ing] and agree[ing] with others . . . to possess with the intent to distribute a controlled substance while on board an aircraft registered in the United States," in violation of 21 U.S.C. § 959(b)(2). (ECF No. 34). The indictment further alleges that the violation involved 5 kilograms or more of a mixture or substance containing a detectable amount of cocaine. Finally, the indictment alleges the violation to have occurred in the country of Brazil, "and elsewhere."

21 U.S.C. 959(b) reads as follows:

(b) Possession, manufacture, or distribution by person on board aircraft

It shall be unlawful for any United States citizen on board any aircraft, or any person on board an aircraft owned by a United States citizen or registered in the United States, to—

    (1) Manufacture or distribute a controlled substance or listed chemical; or

1

(2) Possess a controlled substance or listed chemical with intent to distribute.

21 USC. § 959(c) addresses the extraterritorial jurisdiction of 21 U.S.C. § 959 as follows:

(c) Acts committed outside territorial jurisdiction of the United States; venue

This section is intended to reach acts of manufacture or distribution committed outside the territorial jurisdiction of the United States.

The Defendant asserts that Count 1 of the Superseding Indictment should be dismissed because the Indictment fails to support extraterritorial jurisdiction in Count 1 under 21 U.S.C. § 959(b) because the plain language and congressional intention does not support extraterritorial application in this case, or alternatively, because application of extraterritorial jurisdiction to 21 U.S.C. 959(b) violates the Defendant's due process rights. (ECF No. 52 Mot. to Dismiss 1).

I. FACTUAL BACKGROUND

The facts that led to Count 1 of the Superseding Indictment are as follows: On October 29, 2010, the Defendant sold a plane to Mr. Roy Rogers Ferraz, who made plans to export the plane to Brazil. To aid in the exportation of the plane, an application for an export certificate was filed with the FAA listing Rogers Ferraz as the new purchaser along with the expected date that the title of the plane would transfer to him. Documentation of this sale and export was also filed with U.S. Customs, and the plane received a temporary registration number from the United States. The plane was subsequently exported to Cuiaba, Brazil and was stationed there while awaiting final approval from the Brazilian equivalent of the FAA, known as the ANAC. During this waiting period, the plane was registered simultaneously in Brazil and in the United States. In March 2011, before the plane received final approval to fly from Brazil's ANAC, the plane took off from Brazil and crashed. Rogers Ferraz was piloting the plane at the time it crashed. As a result of the crash, cocaine was found onboard and Rogers Ferraz and another individual onboard, a Bolivian citizen, were arrested by the Brazilian authorities for possession of the cocaine.

II. CONTROLLING LAW AND ANALYSIS

"The federal courts are in consensus on two basic restrictions to giving a law extraterritorial effect. First, Congress must state that it intends the law to have extraterritorial effect. Second, application of the law must comport with due process, meaning that application of the law 'must not be arbitrary or fundamentally unfair.' In determining whether an

extraterritorial law comports with due process, appellate courts often consult international law principles such as the objective principle, the protective principle, or the territorial principle." *United States v. Ibarguen-Mosquera*, 634 F.3d 1370, 1378-79 (11th Cir. 2011)(internal citations omitted).

A. <u>Congressional Intent As To Extraterritorial Application of § 959(b)</u>

"Whether Congress has intended extraterritorial application is a question of statutory interpretation." *United States v MacAllister*, 160 F.3d 1304, 1307 (11th Cir. 1998). "Absent an express intention on the face of the statues to [apply extraterritorially], the exercise of that power may be inferred from the nature of the offenses and Congress' other legislative efforts to eliminate the type of crime involved." *United States v. Baker*, 609 F.2d 134, 136 (11th Cir. 1980).

The Defendant concedes that § 959(c) clearly states Congress' intent that at least parts of § 959 should have extraterritorial effect. However, the Defendant argues that the language of § 959(c) specifies that only "acts of manufacture or distribution" are intended to have extraterritorial application under § 959. Accordingly, Congress did not intend acts of possession or even possession with intent to distribute to have extraterritorial application. Therefore, the Defendant argues, § 959(c) does not specifically provide for extraterritorial application of § 959(b)(2) which addresses possession with intent to distribute by person on board an aircraft. The Defendant argues the language of § 959(c) makes a clear and critical distinction in regards to extraterritorial jurisdiction between manufacture/distribution and possession with intent to distribute. Thus, according to the Defendant, the plain language of the statute manifests Congress' intent to apply extraterritorial jurisdiction only to acts of manufacturing or distribution, not possession. Having argued that Congressional intent as to § 959(b) is not clearly stated in the statute, the Defendant proceeds to address how this Court can infer Congress' intent that § 959(b) should not be applied extraterritorially.

The Defendant argues that courts have inferred Congressional intent to provide for extraterritorial jurisdiction only where the acts created, or were intended to create, a harmful effect in the United States. In *United States v. Lopez-Vanegas*, 493 F.3d 1305, 1313 (11th Cir. 2007), the Court found no extraterritorial application was intended for 21 USC. § 841 and § 846 when "the object of the conspiracy was to possess controlled substances outside the United

3

States with the intent to distribute outside the United States." However, in *Lopez-Vanegas*, the Eleventh Circuit specifically identified the statute at issue in the instant case, 21 U.S.C. § 959, as an example of how Congress "has shown it is capable of addressing acts involving controlled substances occurring outside of the United States," by specifically giving extraterritorial jurisdiction to that statute. *Lopez-Vanegas*, 493 F.3d at 1313. To circumvent this damaging reference to § 959, the Defendant argues that the *Lopez-Vanegas* court recognized the difference between manufacture/distribution and possession with intent to distribute by denying extraterritorial jurisdiction to "a conspiracy to *possess* controlled substances *outside* the territorial jurisdiction of the United States, with intent to *distribute* those controlled substances *outside* of the territorial jurisdiction of the United States." *Lopez-Vanegas*, 493 F.3d at 1313 (emphasis in original). In denying extraterritorial application, Defendant argues, the court focused on the lack of effect upon the United States when "the object of the conspiracy was to possess controlled substances outside the United States with the intent to distribute outside the United States." *Lopez-Vanegas,* 493 F.3d at 1313.

Further supporting its argument that extraterritorial jurisdiction should only be applied where the criminal acts were intended to create a harmful effect in the United States, the Defendant cites an Eleventh Circuit case that applied extraterritorial jurisdiction to defendants who possessed over 50,000 pounds of marijuana in a fishing vessel located outside the three-mile territorial jurisdiction of the United States but within the twelve-mile "customs waters" in violation of 21 U.S.C. § 841(a)(1). *Baker*, 609 F.2d at 135. Critical to the court's application of extraterritorial jurisdiction was its finding that "the location of the vessel clearly indicated an intent to distribute marijuana within United States boundaries." *Id.* at 138. The *Baker* court held that extraterritorial jurisdiction could apply to 21 U.S.C. § 841 for possession with intent to distribute where the possession occurred outside the United States "so long as it is clear that the intended distribution would occur within the territorial United States." *Id.* at 139. However, in analyzing whether Congress intended certain provisions of the Comprehensive Drug Abuse Prevention and Control Act of 1970 to apply extraterritorially, the *Baker* court specifically identified § 959 as an example of how that Act "contains a variety of provisions that explicitly cover acts occurring wholly outside the territorial United States." *Id.* at 137. In dicta, the *Baker*

4

court provided analysis regarding Congress' overall intention in drafting the Comprehensive Drug Abuse Prevention and Control Act of 1970:

> "We perceive no sound reason to differentiate between the importation aspects of the Controlled Substances Act and the crime of possession with intent to distribute. They are part of the same framework, and were enacted at the same time with the single, straightforward congressional purpose of combating drug abuse in every conceivable way." *Id.* at 138.

The Southern District of Texas has addressed virtually identical arguments made by the Defendant that § 959(b) should not be given extraterritorial effect when the conduct did not involve importation of drugs into the United States. In *United States v. Lawrence*, 2012 WL 592169, *2 (S.D. Tex. Feb. 22, 2012), the Defendant traveled from Houston, Texas to Sao Paulo, Brazil in order to pick up packages of cocaine for delivery to various countries, not including the United States. The *Lawrence* defendant argued that § 959(b) should not be given extraterritorial effect because there was no evidence that the acts created or were intended to create any effect in the United States, and thus there was not a sufficient "nexus" between her conduct and the United States. *Id.* The *Lawrence* court rejected those arguments for two reasons. First, the court found that a substantial portion of the co-conspirator activities took place within the United States, thus creating the nexus between the criminal conduct and the United States. Second, the court found that Congress "clearly intended for the statute to apply extraterritorially, as § 959(c) provides for extraterritorial application." *Id.* While *Lawrence* is not binding on this Court, it provides persuasive authority this Court may consider.

*Lopez-Vanegas*, *Baker* and *Lawrence* all indicate that Congress expressed its intent that the entirety of 21 U.S.C. § 959 would be applied extraterritorially, not merely those portions of the act that addressed manufacturing and distribution. The Defendant urges this court to focus on the language in these cases and others that analyze the intention to distribute in, and create a harmful effect on, the United States. But the cases cited by Defendant do not apply that language to the specific statute that the Defendant is charged with violating. To the contrary, the cases suggest extraterritorial jurisdiction is clearly intended under this specific statute. Although there is no indication in the record that the Defendant intended the act of possession to create a harmful effect on the United States, the plain language of § 959 and binding case law in this

5

circuit make no such distinction in interpreting the extraterritorial application of § 959(c). Accordingly, the Court holds that Congressional intent supports the extraterritorial application of § 959(b).

B. <u>Due Process Analysis of Extraterritorial Application of § 959(b)</u>

Having ruled that Congressional intent supports the extraterritorial application of § 959(b), the Court must now decide whether this application violates the Defendant's due process rights. "As long as Congress has indicated its intent to reach [conduct outside the territorial jurisdiction of the United States], a United States court is 'bound to follow the Congressional direction unless this would violate the due process clause of the Fifth Amendment.'" *United States v. Yousef*, 327 F.3d 56, 86 (2nd Cir. 2003)(quoting *United States v. Pinto–Mejia,* 720 F.2d 248, 259 (2nd Cir. 1983)). The Defendant argues that extraterritorial application of § 959(b) would be arbitrary or fundamentally unfair because it fails to meet the nexus requirement and thus violates the principles of extraterritorial jurisdiction under international law.

"In determining whether an extraterritorial law comports with due process, appellate courts often consult international law principles such as the objective principle, the protective principle, or the territorial principle." *United States v. Ibarguen-Mosquera*, 634 F.3d 1370, 1378-79 (11th Cir. 2011). "[U]nder the objective principle, a vessel engaged in illegal activity intended to have an effect in a country is amenable to that country's jurisdiction. Similarly, the protective principle allows nations to assert jurisdiction over foreign vessels on the high seas that threaten their security or governmental functions. Jurisdiction may also be obtained under the passive personality principle over persons or vessels that injure the citizens of another country. Finally, all nations have jurisdiction to board and seize vessels engaged in universally prohibited activities such as the slave trade or piracy." *Marino-Garcia*, 679 F.2d at 1380-82. The Defendant argues that none of these principles of international law support the application of extraterritorial jurisdiction to this case. The Court disagrees and finds that the objective principle justifies extraterritorial application of § 959(b).

The Eleventh Circuit has found the objective principle, sometimes termed the "objective territorial" principle, to apply "where the defendant's actions . . . produced some effect in the United States." *MacAllister*, 160 F.3d at 1308. "'Acts done outside a jurisdiction, but intended to produce and producing effects within it, justify a State in punishing the cause of the harm as if he

had been present at the effect.'" *Baker*, 609 F.2d at 138 (quoting *Strassheim v. Daily*, 221 U.S. 280 (1911)). The Eleventh Circuit has found the objective territorial principle justified extraterritorial jurisdiction "where there was proof that . . . even if the defendant never performed any act within the United States, that he was a part of a conspiracy in which some coconspirator's activities took place within United States territory." *Baker*, 609 F.2d at 138. More specific to the indictment in the instant case, the *Lawrence* court found that the extraterritorial application of § 959 was consistent with international law because "the international activities had a direct effect on the United States' security and the operations of its governmental functions." *Lawrence*, 2012 WL 592169, at *3. In *United States v. King*, the Ninth Circuit found that "appellants' prosecution for violating § 959 could also be justified under the territorial principle, since American courts have treated that as an 'objective' territorial principle." *United States v. King*, 552 F.2d 833, 851-52 (9th Cir. 1976). More recently, in *Chua Han Mow v. United States,* 730 F.2d 1308, 1312 (9th Cir. 1984), the Ninth Circuit also held that the objective principle supports extraterritorial application of 21 U.S.C. § 959. Here, a United States registered aircraft was utilized in the commission of the offense. The superseding indictment further alleges that the Defendant, within the United States, obtained an owner's certificate of registration by falsifying and concealing a material fact by asserting that North Atlantic Aircraft Services Corporation was the true owner of the aircraft in question when it was not and the Defendant knew it was not. Accordingly, the protective principle justifies extraterritorial application of § 959(b).

III. CONCLUSION

For the reasons stated above, the Defendant's Motion to Dismiss Count 1 Based on Subject Matter Jurisdiction and Violation of the Due Process Clause (ECF No. 52) is **DENIED**.

**DONE and ORDERED** in chambers, at Miami, Florida, on September 11, 2012.

_____
**ROBERT N. SCOLA, JR.**
**UNITED STATES DISTRICT JUDGE**

*Copies to:*
Designated U.S. Magistrate Judge
Counsel of record